UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA

v.                                CRIMINAL ACTION NO. 2:08-00006

STEVEN ALLEN HALL


MEMORANDUM OPINION AND ORDER


        Pursuant to the evidence adduced at the motion to
suppress hearing on February 29, 2008, the court makes the
following findings by a preponderance of the evidence and the
conclusions that follow.


I.


        On August 20, 2007, at 1:33 p.m., the Charleston Metro
911 center received a call from an individual who identified
himself by name, address and telephone number and advised that
he was observing from his residence a black male with a gun
sitting alone in a car parked at the rear of 1321 Quarrier
Street.  The car was described as a newer model car, blue or
green in color, and was facing east in the parking lot.  The
occupant of the car was described as reading a newspaper and

handling or playing with a gun.  Upon receipt of that
information, the 911 dispatcher who had received the call
contacted, by radio, Corporal Eric Smith of the Charleston
Police Department, who was in his assigned car about two blocks
away, to check out the individual in the parked car with a gun.

While Officer Smith was on his way to the scene, he
received updated information from 911, which had remained in
touch with the caller, who in turn related his observations of
the man in the parked car.  As the caller continued with a
description of the ongoing activities being observed by him, the
caller reported that the occupant was placing the firearm in the
glove box of the car.

On his way to the site, Officer Smith was aware of the
general character of the neighborhood, particularly the two-
block area in the midst of which 1321 Quarrier Street is
situate.  Quarrier Street runs through the middle of the two-
block section which is bounded by Lee Street on the north and
Virginia Street on the south, both running parallel to Quarrier
Street, and by Bradford Street on the east and Morris Street on
the west.  Officer Smith knew from his eleven years of
experience as a police officer, with some five or six years of

duty in the East End area of Charleston, wherein the two-block section is located, and as one who had lived for a year about two blocks from 1321 Quarrier Street, that the frequency of crime in that two-block section was greater than other areas in Charleston.  He was aware of and has himself made numerous arrests there for prostitution, drugs, auto and business breaking and entering, and burglary.  He was also aware that a school and playground were located across the street from the front of the 1321 Quarrier Street property behind which the target car was located.  The school is Piedmont Elementary School and the playground is Celebration Station where, as he said, "We get numerous calls there for suspicious people approaching children."  The court concludes from the evidence that the two-block section may be considered a moderately high crime area.

Officer Smith arrived at the rear of 1321 Quarrier Street and pulled his vehicle in behind what he understood was the target car.  At that point he asked 911 to inquire of the caller as to whether he was behind the right car.  He was informed by 911 that the caller, who had remained on the telephone line to 911 and was continuing to observe the scene, confirmed that Officer Smith was approaching the correct

3

vehicle.  Upon reaching the rear of what proved to be a green BMW, Officer Smith recognized that its lone occupant was a black male.

As he drove to the scene and pulled in behind the BMW, Officer Smith considered what criminal activity in that moderately high crime area may be contemplated by the car's occupant.  That included the prospect that the occupant, with gun in hand or immediately available, was, as he said, "laying in wait for somebody" in order to commit a domestic offense or an offense with respect to one at the playground or the school across the street.  It also included the prospect of the offense of possession of a concealed weapon without a permit, although Officer Smith had no knowledge of whether the car's occupant had such a permit.

Officer Smith, with his firearm in hand at low ready, for officer safety called out to the occupant to exit the vehicle.  The occupant, who was the defendant, did so, once he heard the command.  Officer Smith, who was still the only officer present, handcuffed him and patted him down for officer safety.  The defendant remained calm throughout.  Officer Smith asked the defendant if he had a firearm and the defendant said he did and that it was in the glove compartment of the car.  The

defendant gave permission for the officer to retrieve it.  The defendant did not have a permit to carry a concealed deadly weapon.  At about that time, Patrolman Koerber, who had been called to the scene, arrived.  Officer Smith then removed a High Point pistol from the glove box.  It had a loaded magazine, but without a round in the chamber.  The defendant later said, after receiving the customary Miranda warnings, that he had gotten the firearm two years earlier and carried it because of recent violence in the East End of Charleston.

## II.

The court observes that the tip that initiated Officer Smith's contact with the defendant was demonstrably reliable. First, the tipster identified himself by name and address to Metro 911 and remained on the telephone line in order that he could continue to be of assistance, thereby making himself accountable for the accuracy of the information he provided. Secondly, the pertinent information given by the tipster, other than the defendant's possession of the firearm, was found by Officer Smith to be correct at each step of the way down to the point the defendant was ordered out of the car.  That is, the tipster gave entirely accurate information as to the location of the car, its color and position on the parking lot, the single

occupancy of the car and the race of the occupant.  Third, the
tipster was obviously within eyesight of the target car when
Officer Smith arrived in that the tipster accurately advised
Metro 911, when asked, that the officer was approaching the
correct car.  There is thus more than sufficient indicia of
reliability of the information provided by the tipster from
beginning to end which concluded with retrieval of the firearm
from the glove box where the tipster said he had observed it
being placed.

        Under the totality of the circumstances, Officer
Smith, based on his familiarity with the neighborhood and its
character and the actions of the defendant as related by an
informed and accountable tipster whose observations were largely
corroborated down to the investigatory stop, was able to form
both subjectively and objectively a reasonable, articulable
suspicion that the defendant may be waiting in his vehicle
behind 1321 Quarrier Street with the firearm in order to do harm
to a child or other individual who may have been at the school
or the playground across the street or to do harm to another in
what may have constituted a domestic offense.  This reasonable
suspicion constituted, at the least, a minimal level of
objective justification for the investigative stop and detention
of the defendant inasmuch as Officer Smith reasonably believed

that criminal activity may be afoot.  <u>Terry v. Ohio</u>, 392 U.S. 1,

30 (1968); <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000); <u>United</u>

<u>States v. Perkins</u>, 363 F.3d 317 (4th Cir. 2004).  Additionally,

Officer Smith was warranted, under the totality of the

circumstances, in making a brief investigatory stop to ascertain

whether the defendant was unlawfully in possession of a

concealed deadly weapon without the necessary license or permit

required by West Virginia law, W.Va. Code, § 61-7-3.  In

effecting the stop of an armed individual, the officer was

justified in taking the steps for officer safety that he

employed.

The defendant's motion to suppress is, accordingly,

ORDERED denied.

The Clerk is directed to forward copies of this

written opinion and order to the defendant and all counsel of

record.

DATED:  April 10, 2008

John T. Copenhaver, Jr.
United States District Judge

7